### UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF LOUISIANA

**DOUGLAS BLANDA**

**CIVIL ACTION**

**VERSUS**

**NO. 20-CV-678-JWD-SDJ**

**COOPER/T. SMITH CORPORATION**

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT ON SEAMAN STATUS

This matter comes before the Court on the *Motion for Partial Summary Judgment on Seaman Status* (Doc. 17) ("*Motion*") brought by Petitioners in Limitation/Defendants Cooper/T. Smith Corporation ("CTS Corp.") and Cooper/T. Smith Mooring Co., Inc. ("CTS, Inc.") (collectively "CTS"). It is opposed by Claimant/Plaintiff Douglas Blanda ("Blanda" or "Plaintiff"). (Doc. 21.) CTS filed a reply brief. (Doc. 24.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted.

### I.    INTRODUCTION AND BACKGROUND

Plaintiff filed this personal injury suit under the Jones Act, 46 U.S.C. § 30104 *et seq*., and general maritime law or alternatively, under Section 905(b) of the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq*. (Doc. 1-1 at 2, ¶ III.) He claims that on April 18, 2018, he was injured on a vessel owned by CTS Corp. while working as a seaman for the same company. (Doc. 1-1 at 3–4, ¶¶ VI and VIII.) He claims the accident and injuries were caused by the negligence of CTS Corp. and the unseaworthiness of its vessel. (*Id*. at 2–4, ¶¶ III., VI. and VIII.)

Specifically, he alleges that he was injured while assisting in the mooring of "an oceangoing vessel called the M/V Sea Victory" to a buoy in the Mississippi River at the Valero # 3 buoys. (Doc. 21 at 2 (citing Doc. 17-4 at 2).) The M/V Sea Victory lowered a mooring line to

the CTS mooring vessel (sometimes referred to as a "launch vessel"), either the Captain Scott or the Captain Jack. (Doc. 21-2, Blanda Deposition, at 96–98.)  He claims he was injured when he "attempted to pick up and move [the] heavy line [while] in an unsteady boat owned and operated by [CTS Corp.]" (Doc. 1-1 at 3,  VI.) More specifically, while "trying to put this big, giant, heavy, wet, greasy [mooring] line on top of this bar so I [could] get ready to put it on the hook, [ ] that's when my back got tight." (Doc. 21 at 2 (quoting Doc. 21-2, Blanda Deposition, at 96).)[1]

According to CTS, Blanda was employed by CTS, Inc. from August 2014 to the spring of 2020. (Doc. 17-2, Defendants' Statement of Uncontested Material Facts ("SUMF"), ¶ 1.) CTS claims he was employed as a lineman. (*Id*.) Blanda urges that he was employed by CTS Corp. from some time in 2013 until approximately April of 2020.  (Doc. 21 at 1.)[2] He claims that he was "a 'blend of lineman and deckhand . . . until October of 2019,' and then was 'an operator/deckhand [the] majority of the time' between October 2019 and April 2020." (*Id*. at 1–2 (citing Doc. 21-2 at 20).)

Plaintiff's Petition was filed originally in the 19th Judicial District Court for the Parish of East Baton Rouge and, on October 8, 2020, removed to this Court. (Doc. 1.) CTS Corp. and CTS, Inc. filed a Petition for Exoneration from or Limitation of Liability on December 11, 2020, (Docket Number 20-838, Doc. 1.) Blanda filed an answer and claim in that proceeding. (*Id*. Doc. 10.) On April 12, 2021, the Limitation proceeding was consolidated with Blanda's suit. (*Id*. Doc. 19.)

The Motion of CTS Inc. and CTS Corp. [3]  asks the Court to find as a matter of law that Blanda was not a seaman. (Doc. 17.)

---

[1] Citations are to the deposition page numbers, not the document page numbers.

[2] In his deposition however, Blanda stated he was employed at CTS from August 2014 until April of 2020. (Doc. 17-3 at 19.)

[3] There is considerable confusion in the pleadings as to the CTS entity whose conduct is at issue. In his Petition, Plaintiff alleges that his employer and the owner of the vessels to which he was assigned was CTS Corp. (Doc. 1-1 at 3, ¶¶ V., VI., and VII.) He reiterates that allegation in his opposition to the present motion. (Doc. 21 at 1.) In their Complaint for Exoneration from or Limitation of Liability, CTS Corp. and CTS, Inc. allege that CTS, Inc. was the

## II.    STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations and emphasis omitted).

If, as here, the dispositive issue (in this case, seaman status) is one on which the nonmoving party bears the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential part of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325. ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.") Stated another way, "[w]here the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.,* 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (internal quotation marks omitted).

In such a case, the party moving for summary judgment is not required to "negate the elements of the nonmovant's case," but may "satisfy [its] burden under *Celotex*" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery". *Little v. Liquid*

---

employer of Plaintiff and the owner of the vessels on which he worked and was injured. (Docket No. 20-cv-838, Doc. 1 at 1–2, ¶¶ 2, 6.). Since neither side makes an issue of this for purposes of the present *Motion*, the Court will not attempt to resolve the issue here but use CTS to refer to Plaintiff's employer and the owner of the vessels on which Plaintiff worked.

*Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc). *See also Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) ("[I]t has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case."); *Sanchez v. Am. Pollution Control Corp.*, 542 F. Supp. 3d 446, 450 (E.D. La. 2021).

Once the mover has met its burden, the burden shifts to the nonmoving party who must establish that a genuine issue of material fact exists. *See Am. Pollution Control*, 542 F. Supp. 3d at 540 (citing *Celotex*, 477 U.S. at 324). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Mudrick v. Cross Equip. Ltd* ., 250 F. App'x 54, 56 (5th Cir. 2007) (quoting *Crawford v. Formosa Plastics Corp*., 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). Stated another way, "[s]ummary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party." *Barnes v. Vannoy,* No. 19-764, 2022 WL 562793, at *1 (M.D. La. Jan. 31, 2022), *report and recommendation adopted sub nom. Barnes v. Vanoy*, No. 19-764, 2022 WL 554655 (M.D. La. Feb. 23, 2022) (citing *Little*, 37 F.3d at 1075).

The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual

> disputes; so long as the evidence in the record is such that a
> reasonable jury drawing all inferences in favor of the nonmoving
> party could arrive at a verdict in that party's favor, the court must
> deny the motion.

*Intl'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

In the context of the specific summary judgment before the Court, the "determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury[.]" *Becker v. Tidewater*, Inc., 335 F.3d 376, 386 (5th Cir. 2003). *See also Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) ("The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."); *Bernard v. Binnings Const. Co*., 741 F.2d 824, 828 (5th Cir. 1984) ("[S]ummary judgment on seaman status is proper 'where the only rational inference to be drawn from the evidence is that the worker is not a seaman.' ") (quoting *Beard v. Shell Oil Co*., 606 F.2d 515, 517 (5th Cir. 1979)); *Starks v. Advantage Staffing*, LLC, 202 F. Supp. 3d 607, 611 (E.D. La. 2016) ("[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal.") (quoting *White v. Valley Line Co*., 736 F.2d 304, 305 (5th Cir. 1984)). "Thus, summary judgment on seaman status in Jones Act cases is rarely proper." *Starks*, 202 F. Supp. 3d at 611 (citing *Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983)).

## III.    ARGUMENTS OF THE PARTIES

### A.    *Argument of CTS*

All parties agree (Doc. 17-1 at 7; Doc. 21 at 10) that the test for seaman status is set forth in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995).

> First, . . . an employee's duties must contribute to the function of the
> vessel or to the accomplishment of its mission. . . . Second, . . . a
> seaman must have a connection to a vessel in navigation (or to an

identifiable group of such vessels) that is substantial in terms of both
duration and nature.

*Id.* at 368 (cleaned up).

As to the first prong, CTS concedes that in carrying out some of his work duties, Plaintiff used and contributed to the function of small launch or mooring vessels owned and operated by CTS. (Doc. 17-1 at 1.) But CTS claims that Plaintiff cannot meet the second prong, requiring that he have a substantial connection to these vessels, arguing that his connection to them was not substantial either in nature or duration. (Doc. 17-1 at 7–13.)

### *1. Substantial in Nature*

CTS points the Court to the recently decided Fifth Circuit case of *Sanchez v. Smart Fabricators of Texas*, LLC, 997 F.3d 564 (5th Cir. 2021). Under *Sanchez*, in evaluating whether a worker meets the substantial in nature requirement, a court must consider the worker's exposure to "perils of the sea," but must also ask these additional questions:

> (1) Does the worker owe his allegiance to the vessel, rather than
> simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance
> of a discrete task after which the worker's connection to the
> vessel ends, or (b) Does the worker's assignment include sailing
> with the vessel from port to port or location to location?

*Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d at 573–54.

According to CTS, Blanda's job title was lineman and remained so during the entirety of his employment with CTS (Doc. 17-1 at 2 (citing Affidavit of Anthony Almerico, Doc. 17-5).) Almerico is the General Manager of CTS, Inc. and was previously employed by CTS, Inc. as a lineman. (Doc. 17-5 at 1.) Blanda was never designated as a deck hand or boat operator. (*Id*. at 2.)

As a lineman, Blanda helped tie and untie ocean-going ships either to a dock or to midstream buoys located in the Mississippi River. (*Id*. at 4.)

When tying or untying a vessel to or from a dock, linemen like Blanda would do so from land. (*Id*. at 5.) When the vessel was to be tied or untied to a buoy in the river, Blanda did so from launch boats owned by CTS. (*Id*.) The launch boats were less than 25 feet long, powered by outboard motors and had no sleeping quarters, galley or cabin. (*Id*. at 4.) Linemen "do not eat, sleep or otherwise live on the small launch boats, unless such activities occur incidentally during their jobs." (Doc. 17-1 at 5 (citing Almerico Affidavit, Doc. 17-5).)

When linemen complete a mooring job from a launch boat, they "always return to shore." (*Id*. (citing Almerico Affidavit, Doc. 17-5).) When not mooring or unmooring vessels, they are waiting for their next assignment and "can spend considerable time sleeping in or waiting in their CTS commercial vans, to which they are assigned." (*Id*. (citing Almerico Affidavit, Doc. 17-5).) They use these vans to get to various launch boat locations. (*Id*. (citing Almerico Affidavit, Doc. 17-5).)

CTS argues that Blanda fails the "substantial in nature" test as announced in *Sanchez*, *supra*. As to the test's first question, to whom or what does Blanda owe his allegiance, CTS argues that Blanda owes his allegiance to CTS as his shoreside employer, not the vessels on which he worked. (*Id*. at 9.) CTS stresses that 92% of his job was on land and the little time he was on the vessel "was limited by the duration of the job, travel to and from the job site, and sometimes minor miscellaneous preparations aboard the boat." (*Id*.)

Plaintiff fails the second Sanchez prong, argues CTS, since Blanda's work was not "sea-based" and did not involve "seagoing activities." (*Id*.) Although Plaintiff helped tie or untie the mooring lines of seagoing vessels, he never boarded them. (*Id*.)

The third prong of the *Sanchez* test first asks whether the worker's "assignment to a vessel [is] limited to a discrete task after which [his] connection to the vessel ends[?]" CTS insists that such was the case here since Blanda's discrete job of mooring/unmooring vessels would end his connection to the vessel once he completed the job and returned to shore. (*Id*.) As to the last part of the test's third prong, whether Blanda "sail[ed] with the vessel from port to port or location to location," CTS contends that Blanda traveled by van to the most proximate launch, traveled with the launch to perform the job, and then returned to the dock. (*Id*.)

### 2. Substantial in Duration

In terms of duration, CTS argues that the use of launch boats by Plaintiff and other linemen was only "occasional[ ]," and then only to "moor/unmoor seagoing vessels at midstream buoy systems" and "for transportation to ocean-going vessels." (Doc. 17-1 at 1.) According to CTS, Blanda "spent only about 8% of his time, at maximum, aboard the launch boats during the year leading to his alleged accident. Over 90% of his job duties occurred on land." (*Id*. at 1, 9–10.) This is far below the 30% rule of thumb required by *Chandris, Inc. v. Latsis*, 515 U.S. at 371, to defeat summary judgment on seaman status. (Doc. 17-1 at 9.) CTS maintains that his job of tying and untying vessels, whether from the CTS launch boats or from land, would "typically last[ ] between ten minutes and two hours." (*Id.* at 9, 12.)

CTS supports these contentions with the Affidavit of CTS, Inc. General Manager Anthony Almerico (Doc. 17-5 at 6-9, ¶¶ 18-20) which in turn is supported by Lineman Payroll Logs (Doc. 17-4) and a summary of the breakdown of Blanda's time doing various jobs for CTS (Doc. 17-6). Both the Affidavit and the Lineman Payroll Logs are for a period of only one year. CTS justifies providing records for this limited portion of Blanda's employment by arguing that "[t]he Fifth

Circuit held that analysis of one year of an employee's records was sufficient in analyzing *Chandris*' 30% requirement." (Doc. 17-1 at 10 (citing *Mudrick*, 250 F. App'x at 59 n.2).)

### B.  Argument of Plaintiff Douglas Blanda

#### 1. Substantial in Nature

Plaintiff spends little time addressing the substantial in nature requirement. In his discussion of this requirement, Plaintiff does not discuss or even mention *Sanchez*. Plaintiff focuses his nature argument on the fact that, for the work he did mooring vessels to midstream buoys, he was required to work from CTS' fleet of launch boats in the Mississippi River. (Doc. 21 at 8) ("Other than a few incidental functions, such as getting gas or equipment between mooring jobs, all of the work done by the linemen is done either from docks or launch boats during the mooring jobs.").) When working from the launch boats he was exposed to "perils of the sea." (*Id*. at 6–7 (quoting Doc. 21-2, Blanda Deposition, at 174).)

Although not reflected in his job title, Blanda argues he did deckhand work aboard the CTS vessels and his job was a "blend of lineman and deckhand" prior to his accident. (*Id*. at 1-2.) From October of 2019, after his accident, until he left CTS to have surgery, he was "an operator/deckhand [a] majority of the time." (*Id*.) "[F]or the last six . . . months of his employment, Mr. Blanda was training as an operator and would spend approximately twelve (12) hours of every shift aboard a vessel." (Doc. 27 at 4, ¶ 18 (citing Doc. 21-2, Blanda Deposition, at 173, 184–85).

In addition to mooring and unmooring from the launch boats, Blanda contends he used the boats to travel to various river locations to perform his line work. (Doc. 21 at 5). He also did other kinds of work from the launch boats including untying lines that "get stuck in the clusters," and, in certain cases (as when dock winches were broken), attaching mooring lines to the dock. (*Id*. at 5-6.)

*2. Substantial in Duration*

Plaintiff attacks the accuracy of the data used by CTS to support its argument that Plaintiff spent no more than 8% of his work time in vessel-related work. Calling it, "woefully inaccurate" (*id*. at 3), Plaintiff charges that it "misses a very large percentage of time that [linemen] are working aboard the vessels which does not get logged," (*id*. at 6). He states that the times reflected in the CTS logs only begin "once we touch a line. . . . But we'll be out there before and after all those times get put in." (*Id*. at 3 (quoting Doc. 21-2, Blanda Deposition, at 151).) Plaintiff gives as an example being "in a boat for eight hours without even touching a line." (*Id*.)

Blanda testified that the CTS records "didn't include travel time to and from the mooring locations or any work that had to be done prior to mooring operations beginning, which could include waiting for the ship to get into position, waiting for the tugs to arrive, and various other duties." (*Id*. at 14 (citing Doc. 21-2, Blanda Deposition, at 35–36).)

Plaintiff argues he spent a "substantial amount of time" (*id*. at 3), indeed, a "very large percentage of his time," working on vessels (*id*. at 7). Without citation to record evidence, he contends that "up to 50% of [his] time [was] spent handling lines while in launch boats, in the river." (*Id*. at 8.) He concedes that "only a small fraction of a 24-hour shift [was] actually spent performing [his] job duties, as most of the time is spent waiting for jobs to be called in." (*Id*. at 15). Nonetheless, he argues, without citation to authority, that the Court should not count or consider the time Plaintiff was on shore waiting for his next assignment. (*Id*. at 7, 8,15.) Because there is a dispute of fact on all these issues, contends Plaintiff, summary judgment should be denied.

### C.  Reply of CTS Defendants

In its reply brief, CTS focuses entirely on substantial-in-duration. It notes that while Plaintiff contests the 8% vessel time urged by CTS and attacks CTS's methodology, "Blanda does not counter with an alternate percentage." (Doc. 24 at 1.) Despite Plaintiff's disagreement with CTS's calculations, CTS insists its "calculus is sound." (*Id*.) Its records "account for every instance Blanda used a launch boat in the commission of a job." (*Id*. at 1–2.) Furthermore, argues CTS, the dispatch records account for all of the hours in which Blanda used a launch boat including travel and waiting times while on the vessels. (*Id*. at 2.)

Finally, CTS disputes Plaintiff's argument that Plaintiff's waiting time should not be used for purposes of calculating the percentage of his work time aboard vessels since Plaintiff was on duty and being paid for his time and was not free to leave. (*Id*. at 3–4 (citing, *inter alia*, *Brewer v. Motiva Enters, LLC.*, No 35, 306, (23d Judicial District Court, Par. Of St. James, La., Feb. 18, 2014) (Judgement With Written Reasons) (located at Doc. 17-7)).) Furthermore, this time is relevant to measuring his relative time on the job when he was exposed to maritime perils. (*Id*.)

### IV.    TEST FOR SEAMAN STATUS

To determine if a worker is a seaman, the Supreme Court has established a two-pronged test:

> First, . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.

*Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (cleaned up). *See also Becker v. Tidewater, Inc.*, 335 F.3d 376, 387 (5th Cir. 2003).

### A.  Vessel or Identifiable Fleet of Vessels

Central to both prongs of the *Chandris* test is the presence of a "vessel in navigation"[4] to which the putative seaman has a substantial employment connection and whose duties contribute to the function of the vessel. *See Chandris*, 515 U.S. at 368.  Where a worker performs duties on multiple vessels, the vessels must form an "identifiable fleet" in order for him to be a seaman. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 556 (1997). The Court in *Papai* defined identifiable fleet as a group of vessels with the "requisite degree of common ownership or control." *Id*. at 560.

Here the group of launch boats on which Blanda performed his work, including the vessel he was on at the time of his alleged injury, were all owned and operated by CTS. (Almerico Affidavit, Doc. 17-5 at 2, ¶ 4) ("Cooper owns all launch boats used in assisting its customers, including all launch boats on which Blanda would have worked as a Cooper lineman.").) CTS therefore concedes that the launch boats on which Plaintiff worked were vessels and formed part of an identifiable fleet.

### B.  Contribution to the Function or Mission of the Vessel

The first prong of the *Chandris* test requires that the worker's "duties must contribute to the function of the vessel or to the accomplishment of its mission."  *Chandris*, 515 U.S. at 368. With respect to this requirement, the Supreme Court specifically rejected the notion that one must "hand, reef or steer" the vessel, i.e., aid in its navigation, in order to be a seaman. *McDermott International, Inc. v Wilander*, 498 U.S. 337, 343, 355 (1991). Meeting this part of the test "is relatively easy: the claimant need only show that he does the ship's work." *Becker*, 335 F.3d at

---

[4] The requirement that the vessel be "in navigation" has not been interpreted to require "a structure's locomotion at any given moment" but rather, to mean "that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time." *Stewart v Dutra Constr. Co.*, 543 U.S. 481, 496 (2005).

387–88. "This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.' " *Id.* at 388 (quoting *Chandris*, 515 U.S. at 368). "It is difficult to imagine a case in which a worker performs substantial work on a vessel without contributing to its mission." THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW § 6:9 (6th ed. 2018, Dec. 2021 update).

While the parties disagree as to the exact duties Blanda performed aboard CTS's launch boats,[5] there is no doubt that these duties contributed to the function of the CTS vessels and CTS does not urge otherwise. Their disagreement is irrelevant for purposes of this prong of the *Chandris* test since all of these duties, when performed from the vessel, contributed to the function of the launch boats.

### C. Connection to the Vessel(s) – Substantial in Nature

CTS's Motion concerns both sub-parts of *Chandris*' second prong, i.e., substantiality in nature and duration. Because of recent developments in the nature test, we start there. Until recently, the "primary test" used by the Fifth Circuit to determine whether a worker's connection to a vessel was substantial in nature "asked whether . . . plaintiffs were subject to 'perils of the sea.' " *Sanchez v. Smart Fabricators of Texas, L.L.C.* 997 F.3d at 573 (citing *Naquin v. Elevating Boats, L.L.C.,* 744 F.3d 927 (5th Cir. 2014) and *In re Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000)). *See also, Sanchez v. Am. Pollution Control Corp.*, 542 F. Supp. 3d 446, 454 (E.D. La. 2021).[6]

In *Sanchez*, the *en banc* court reversed course and held that a worker's exposure to "perils of the sea" would no longer be "the sole or even the primary" criteria for measuring whether the

---

[5] For instance, Blanda argues that he was a " 'blend of lineman and deckhand . . . until October, 2019,' " after which he "was 'an operator/deckhand [the] majority of the time . . .' " (Doc. 21 at 1 (quoting Doc. 21-2 at 20).) Defendants argue his job was always as a lineman. (Doc. 17-1 at 1.)

[6] To avoid confusion and distinguish it from *Sanchez v. Smart Fabricators of Texas, L.L.C.*, *supra*, the Court will refer to *Sanchez v. Am. Pollution Control Corp.*, *supra*, as "*Am. Pollution Control*."

worker's connection to a vessel was substantial in nature. *Sanchez*, 997 F.3d at 573. Gilbert Sanchez worked as a welder for Smart Fabricators of Texas, L.L.C. ("SmartFab"). *Id.* at 566. Sanchez spent 61 of the 67 days he worked for SmartFab doing welding jobs aboard two jack-up drilling vessels owned by Enterprise Offshore Drilling LLC ("Enterprise"). *Id.* at 566–67. He spent 48 days (72% of his total work time) doing "discrete" welding jobs aboard the Enterprise WFD 350 while it was "jacked-up so that the deck of the barge was level" with a dock which he could access by "tak[ing] two steps on a gangplank." *Id.* at 567. He spent the last 13 days (19% of his time) aboard the Enterprise jack-up barge 263 ("E 263") which was on the Outer Continental Shelf. *Id.* Plaintiff was injured on the E 263 when he tripped on a pipe welded to the rig. *Id.*

Plaintiff filed suit under the Jones Act in state court and SmartFab removed the case to federal court. *Id.* Sanchez moved to remand since Jones Act claims are not removable. *Id.* The defendant opposed the motion arguing that Sanchez was not a seaman. The district court agreed with defendant and denied the motion to remand. *Sanchez v. Enter. Offshore Drilling, L.L.C.*, 376 F. Supp. 3d 726, 733 (S.D. Tex. 2019).

The Fifth Circuit initially affirmed the district court in a panel opinion. *Sanchez v. Enter. Offshore Drilling, L.L.C.*, 952 F.3d 620 (5th Cir. 2020) (first panel opinion). The Court then superseded its original opinion and reversed the district court, holding Sanchez was a seaman. *Sanchez v. Enter. Offshore Drilling, L.L.C.,* 970 F.3d 550 (5th Cir. 2020) (second panel opinion). In reversing the district court, the Court relied on two previous Fifth Circuit cases, *In re Endeavor Marine, Inc.,* 234 F.3d 287 (5th Cir. 2000) (per curiam) and *Naquin v. Elevating Boats, L.L.C.,* 744 F.3d 927 (5th Cir. 2014).

The Fifth Circuit then granted rehearing *en banc* and vacated the second panel opinion. *Sanchez v. Enter. Offshore Drilling, L.L.C.*, 978 F.3d 976 (5th Cir. 2020) (granting motion for

rehearing *en banc*). The Fifth Circuit held that Sanchez was not a seaman because his employment

related connection to a vessel was not substantial in nature. *Sanchez*, 997 F.3d at 576.  The Court

did not eliminate "perils of the sea" as a criterion by which to measure substantial in nature but

added three additional considerations:

> The panels in *Endeavor Marine* and *Naquin* asked whether those
> plaintiffs were subject to the "perils of the sea" as the primary test
> of their satisfaction of the nature element. While this is one of the
> considerations in the calculus, it is not the sole or even the primary
> test. . . .
>
> We therefore conclude that the following additional inquiries should
> be made:
>
> (1) Does the worker owe his allegiance to the vessel, rather than
> simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance
> of a discrete task after which the worker's connection to the vessel
> ends, or (b) Does the worker's assignment include sailing with the
> vessel from port to port or location to location?

*Sanchez*, 997 F.3d at 573–74.

### D.  *Connection to the Vessel(s) - Substantial in Duration*

CTS's Motion also argues that Blanda fails the substantial in duration part of the *Chandris*

test.  This Court has previously addressed the durational requirement.

> When considering the duration element, "[w]here the worker
> divides his time between vessel and land, an employee can only
> establish the requisite connection to a vessel—and thus qualify as a
> seaman—if he spends a substantial portion of his time in service of
> the vessel." *Grab v. Boh Bros. Const. Co.*, 506 F. App'x 271, 277
> (5th Cir. 2013). To measure the substantiality of the worker's vessel-
> based work, the Court in *Chandris* adopted the Fifth Circuit's 30%
> guideline: where a worker divides his time between land-based and
> vessel-related service, "[a] worker who spends less than 30% of his
> time in the service of a vessel in navigation should not qualify as a

seaman under the Jones Act." *Chandris*, 515 U.S. at 371, 115 S.Ct. 2172.

*Gage v. Canal Barge Co.*, 431 F. Supp. 3d 754, 762 (M.D. La. 2020) (deGravelles, J.).

When measuring the 30% rule of thumb, "[t]ypically, the seaman status inquiry considers the overall course of the worker's employment with a particular employer," *Am. Pollution Control*, 542 F. Supp. 3d at 451 (citing *Chandris*, 515 U.S. at 371-72, 115 S.Ct. 2172), i.e., "the entire length of a plaintiff's employment with the defendant." *Gage*, 431 F. Supp. 3d at 762 (quoting *Zertuche v. Great Lakes Dredge and Dock Co.*, LLC, 306 F. App'x 93, 96 (5th Cir. 2009).

## V.    DISCUSSION

As mentioned earlier, CTS agrees that the launch boats on which Blanda worked were vessels in navigation and part of an identifiable fleet owned and operated by it. CTS does not argue (nor could it) that Blanda's duties did not contribute to the function of the launch boats. However, it argues that Blanda's connection to these vessels was not substantial in duration or nature. We begin with substantial in nature.

### A.  Substantial in Nature

Under *Sanchez*, the Court must now consider four factors: 1) to whom does the worker owe his allegiance; 2) "is the work sea-based or involve sea-going activity;" 3) is the worker's assignment on the vessel discrete and when completed, does the connection to the vessel end or does the work include sailing with the vessel port to port or assignment to assignment; and, 4) does the work expose the worker to "perils of the sea?" *Sanchez*, 997 F.3d at 574.

The Court will consider each factor separately.

### B.  The Allegiance Factor

*Sanchez* does not define the term "allegiance" and provides little guidance as to how this factor should be applied or measured, merely quoting from *Chandris*: "Congress established a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land- based employer, are seamen." *Sanchez*, 997 F.3d at 574, n. 65 (quoting *Chandris*, 515 U.S. at 359).[7] Because in *Sanchez*, the employer and vessel owner were different, the question of whether the worker's allegiance was to one or the other was meaningful. But where, as here, the employer and vessel owner are same, this factor is much less important. Indeed, the Court agrees with Professor Thomas Galligan that "[i]n single employer cases, [the allegiance inquiry] is essentially irrelevant." Thomas C, Galligan, Jr., *The "Nature" of Seaman Status After Sanchez*, 82 LA. L. REV. 1, 37, (2021).

> In such a case the vessel and the employer are essentially one and allegiance is owed to both. Since they are essentially one and the same, the question answers itself.
>
> What about an employer who owns or controls multiple vessels? The answer should not change. The employee can owe allegiance to the employer as well as the vessels.

*Id*. at 27.

---

[7] As pointed out in *Am. Pollution Control*, *Sanchez's* paraphrasing of the quoted language in *Chandris*, changes "**not solely** to a land-based employer" to "**rather than simply** to a shoreside employer." *Am. Pollution Control*, 542 F. Supp. 3d at 457 (citing *Sanchez*, 997 F.3d at 574, n. 65, in turn quoting *Chandris*, 515 U.S. at 359). The Court finds that, at least in the context of this case, this difference in language yields no difference in outcome since the Court finds that Blanda owed his allegiance, at least in part, to the vessels on which he worked and did not owe his allegiance, "solely", "simply" or "only" to CTS. Professor Galligan observes that "[t]he 'rather than simply' language means that a worker may owe allegiance to both a shoreside employer and a vessel on which they work." Thomas C, Galligan, Jr., *The "Nature" of Seaman Status After Sanchez*, 82 LA. L. REV. 1, 28, (2021).

Because CTS owned and operated the vessels on which Blanda worked, Blanda owed his allegiance to both the vessels and CTS as his shoreside employer and not "solely" or "simply" to CTS. The Court finds this part of the substantial-in-nature test satisfied.[8]

### C.   The Sea-Based or Seagoing-Activity Factor

In *Sanchez*, the plaintiff worked on two vessels. On one of the vessels, his "work was performed while [the vessel] was jacked up with the barge deck level with the dock and a gangplank away from shore." *Sanchez*, 997 F.3d at 575. As to his work on this vessel, the court found he "was not engaged in 'seagoing activity.' *Id*. "His duties on the [vessel] did not 'take him to sea;' his work on the docked vessel was not 'of a seagoing nature' . . ." *Id*. The other vessel Sanchez worked on, however, was located in the Gulf of Mexico on the Outer Continental Shelf, and he was performing its work at the time he was injured. *Id*. at 575.

It is important to note that *Sanchez* made clear that the sea-based/seagoing-activity prong of the test does not require the worker literally to "go to sea:"

> Consider the captain and crew of a ferry boat or of an inland tug working in a calm river or bay, or the drilling crew on a drilling barge working in a quiet canal. No one would question whether those workers are seamen. Yet, their risk from the perils of the sea is minimal.

*Id*. at 574. *See also Am. Pollution Control*, 542 F. Supp. 3d at 455–56 ("[T]his Court does not interpret [*Sanchez*] as requiring that the plaintiff literally 'go to sea . . .'"); *Meaux v. Cooper Consolidated, LLC*, 545 F. Supp. 3d 383, 388–89 (W.D. La. 2021) (finding that plaintiff's "work on or from a crane barge alongside cargo vessels moored or anchored midstream in the Mississippi

---

[8] Professor Galligan suggests that the "allegiance . . . inquiry . . . overlap[s] with the durational requirement." 82 LA. L. REV. at 37. This Court believes allegiance and duration are (and should be) separate considerations and to conflate the two "befogs [and] does not clarify." *Id*. at 35. However, to the extent there is any overlap, the Court takes up whether Blanda's work time on CTS vessels satisfies the *Chandris* substantial-in-duration test in the section devoted to that issue.

River" satisfied the sea-based/seagoing-activity prong of *Sanchez*); *Gage*, 431 F. Supp. 3d at 770 (relying on *Naquin*, *overruled on other grounds by Sanchez*), and noting that " 'maritime perils' . . . or 'perils of a maritime work environment,' [is] a more accurate phrase than the misleading term, 'perils of the sea.'"); Galligan, 82 LA. L. REV. at 30 ("[T]he word 'sea' in these opinions really means 'navigable waters.' ").

As to Sanchez's work on the docked vessel, "the court held that [Sanchez] failed the nature test because his work was not 'sea-based.'" *Am. Pollution Control*, 542 F. Supp. 3d at 454-55 (citing *Sanchez*, 997 F.3d at 575-76). "As to [Sanchez's] work on the offshore rig, [*Sanchez*] appears to conclude that this assignment satisfied the sea-based/seagoing-activity activity factor." *Id*.

Most of Blanda's vessel work was performed while the vessels were away from the dock and in the Mississippi River. Blanda's use of CTC vessels was not just for traveling to and from his work but was an integral part of how he performed his job.  The essential nature of the work required him, while located in launch boats approximately 25 feet long, to take mooring lines dropped from oceangoing vessels and tie or untie them to or from buoys midstream in the Mississippi River. The Court finds that his work "took him to sea" and involved "seagoing activities" as those terms of art are used in *Sanchez*. The Court in *Meaux* reached a similar conclusion:

> Cooper is correct that Meaux performed traditional longshore work, which is typically considered land-based employment. What is different here is that Meaux performed this work on or from a crane barge alongside cargo vessels moored or anchored midstream in the Mississippi River. Neither the barges nor the cargo vessels were dockside merely a gangplank from shore. Rather Meaux had to take a crew boat or, as he did on at least one occasion, ride the crane barge to the location of the cargo vessels being loaded or unloaded. This Court thinks this separation from the safety of land, even if not all that far, taken together with the fact that all of Meaux's work was

performed aboard vessels midstream in a dangerous river, is enough
of a distinction to make Meaux's work a sea-based activity.

*Meaux*, 545 F. Supp. 3d at 388.

### D.  The Discrete Task/Sailing with the Vessel Inquiry

*Sanchez's* third substantial-in-nature factor asks: "(a) Is the worker's assignment

to a vessel limited to performance of a discrete task after which the worker's connection to

the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from

port to port or location to location?" *Sanchez*, 997 F.3d at 574.

This "either/or" factor was meant to distinguish between what the *Sanchez* court

generally called "two types of workers . . . found on drilling rigs."

> First, we have the drilling crew, who conduct the drilling operations
> (and workers who support that activity) and stay with the vessel
> when it moves from one drilling location to another. These workers
> are the members of the crew of the vessel and are seamen. The
> second group are specialized transient workers, usually employed
> by contractors. These workers are engaged to do specific discrete
> short-term jobs. Discrete transient jobs are like the work done by
> longshoremen when a vessel calls in port. As stated in *Papai*, these
> workers have only a "transitory or sporadic" connection to a vessel
> or group of vessels and do not qualify for seaman status. Sanchez,
> as a transitory worker, falls into the second group, and thus does not
> satisfy the nature test.

*Id.* at 576.

Blanda does not fit neatly into this "either/or" dichotomy. Unlike Mr. Sanchez and unlike

longshoremen who work on a variety of different vessels owned and controlled by different

owners, Blanda's work was on the same group of vessels all owned by his employer CTS. Unlike

Sanchez, whose job aboard a given vessel was "transient," "short-term," and "discrete," Blanda's

work fulfilled what was essentially the sole function of the vessels, to assist in mooring ocean-

going vessels to buoys in the river. His work aboard these vessels was not "transitory" or "sporadic" but was consistent over the life of his employment.[9]

In addition to doing the main work of the vessel, Blanda did other jobs from the boats: he cleaned buoys (Doc. 17-3 at 29); he took river pilots to and from the ships (*id*. at 93); and he cleared lines which had become tangled in logs (*id*. at 36, 40). He sometimes used the boat in connection with mooring an ocean-going vessel to a dock when the dock winches were broken (*id*. at 52) or when he needed to bring spring lines to the dock (*id*. at 179). Preparatory to its use, Blanda would make sure the vessel had oil and gas, that the running lights were working and that there were enough dog lines. (*Id*. at 29, 160). Blanda travelled from the vessel's home port via the launch boats to perform his work and returned to the vessel's port when the work was complete. (*Id*. at 39–42.) Blanda satisfies this prong of the Sanchez substantial-in-nature test.[10]

### E.  *"Perils of the Sea" Inquiry*

Three things are clear from *Sanchez* regarding perils of the sea. First, whether a worker was exposed to "perils of the sea" is no longer "the sole or even primary test" in measuring whether a worker's connection to a vessel or identifiable fleet of vessels is substantial in nature. *Sanchez*, 997 F.3d at 573. Second, however, it remains "one of the considerations in the calculus" of

---

[9] There are other workers who likewise are hard to place on either side of the "either/or". For instance, consider a galley hand who is employed directly by the rig owner or through a contractor, who is a part of the regular crew of the drilling vessel when it is on location drilling, whose job is "discrete" in that he only works in the galley, but is not "short-term" and who may not typically sail with the vessel when it moves to a different location. Such a worker is considered a seaman. *See e.g.*, *Stoot v. Fluor Drilling Servs., Inc*., 851 F.2d 1514, 1517 (5th Cir. 1988) ("A caterer's employee working as a galley hand on a drilling rig is a seaman."); *Bolfa v. Pool Offshore Co*., 623 F. Supp. 1177, 1179 (W.D. La. 1985) (granting summary judgment on seaman status to galley hand.); *Clement v. Sontheimer Offshore Catering Co.,* 577 So. 2d 1083, 1085 (La. App. 1 Cir. 1991); *Luper v. Sea Crew Serv. Corp*., 537 So. 2d 366, 366 (La. App. 4 Cir. 1988). Professor Galligan provides other examples of workers who would ordinarily be considered seamen but don't fit easily into the "either/or" test. 82 LA. L. REV. at 33–34.

[10] Professor Galligan suggests that the "discrete-job analysis . . . seems to overlap with the durational requirement." 82 La. L. Rev. at 35. This Court believes these two factors are (and should be) separate. As stated earlier in connection with the allegiance inquiry, the Court agrees with Professor Galligan that to conflate the two "befogs [and] does not clarify." *Id*. at 37. However, to the extent there is any overlap, the Court takes up whether Blanda's work time on CTS vessels satisfies the substantial-in-duration test in the section devoted to that issue.

measuring the substantial in nature requirement. *Id*. Third, as mentioned above, the word "sea" as used in the phrase "perils of the sea" is not to be applied literally and is meant to cover inland navigable waters as well as the open ocean. *Id*. at 574.

Blanda's work required him to travel in and work from a 25 foot, outboard-motor-powered launch boat in the Mississippi River, well-known for its strong currents and unpredictable eddies and undertows. *See, e.g.*, *Matter of Dredge Big Bear*, 525 F. Supp. 3d 731, 734 (M.D. La. 2021) (deGravelles, J.) (involving allision caused by strong eddies in Mississippi River). In his testimony, Blanda described the risks of facing the large wakes of passing ocean-going vessels or tugs pushing large tows, the vessel flipping, and its occupants falling overboard and being sucked beneath a passing barge or other large vessel and drowning. (Doc. 21-2, Blanda Deposition, at 152, 174.) These are significant maritime perils.

Blanda's exposure to marine perils was therefore much different from those Sanchez faced as he did his welding work aboard the WFD 350 which was "jacked-up with the barge deck level with the dock and a gangplank away from shore." *Sanchez*, 997 F.3d at 575. Blanda's situation was more like that of the plaintiff in *Meaux,* 545 F. Supp. 3d 383. Meaux was a flagger and utility man on a midstream crane barge which loaded and unloaded larger vessels in the Mississippi River. *Id*. at 386.  The court found that he satisfied the "perils of the sea" part of the *Sanchez* test.

> This Court thinks this separation from the safety of land, even if not all that far, taken together with the fact that all of Meaux's work was performed aboard vessels midstream in a dangerous river, is enough of a distinction to make Meaux's work a sea-based activity. Indeed, the midstream location of Meaux's work makes this case distinguishable from *Naquin* and *Endeavor Marine* where the plaintiffs' work was performed on or near the dock. *See Sanchez*, 997 F.3d at 573. To be sure, the en banc court in *Sanchez* declined to overrule *Endeavor Marine* because, in part, the plaintiff there moved with his assigned crane barge to new wharf locations on the Mississippi River. *Id*. Here, Meaux's work was never performed on

22

or near a dock but was done entirely from vessels moored or anchored midstream.

*Meaux*, 545 F. Supp. 3d at 388–89.

The Court finds that Blanda satisfies the perils of the sea part of the *Sanchez* substantial in nature test.

### F.  Conclusion re Substantial-in-Nature

As stated in *Am. Pollution Control*, "[i]t is not entirely clear to this Court if [*Sanchez*] set forth mandatory elements—meaning that all must be satisfied in order for the connection to be substantial in nature—or if [*Sanchez*] intended that they be treated as indicia or factors to be weighed." *Am. Pollution Control Corp*., 542 F. Supp. 3d at 457.[11] But, like *Am. Pollution Control*, because all four factors are satisfied, the Court need not decide this issue. *Id*. The Court finds that Blanda's connection to the CTS vessels was substantial in nature.

### G.  Substantial in Duration

The analysis of this *Chandris* factor is unaffected by *Sanchez*. The Supreme Court in *Chandris* wrote "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371. However, "[t]his figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. . . ." *Roberts v. Cardinal Servs., Inc.,* 266 F.3d 368, 375 (5th Cir. 2001) (quoting *Chandris* 515 U.S. at 371).

CTS has come forward with summary judgment evidence that Blanda spent a maximum of 8% of his time doing work on or from CTS's fleet of vessels.[12] The Court notes that although

---

[11] Professor Galligan asks the same question regarding the Sanchez additional inquiries: "do they contemplate a multi-factor test, or must a putative seaman clear all four hurdles or elements for their employment connection to a vessel to be substantial in nature?" 82 La. L. Rev. at 35. Given the very wide variety of workers and job duties that exist in a maritime setting, it seems to this Court that these factors should be weighed.

[12] (Docs. 17-4, 17-5 and 17-6.)

Blanda worked for CTS for over five years, CTS only produced data for the year preceding his accident, relying on *Mudrick v. Cross Equipment, Ltd*., 250 F. App'x 54, 59 n.2 (5th Cir. 2007) ("As opposed to eight days out of a year's employment, one year's time sheets are sufficient to satisfy the flexible requirement that we examine the Decedent's entire employment history to determine his status as a Jones Act seaman."). This Court does not read *Mudrick*, as CTS does, to hold one year of employment data sufficient in all cases. If a court concludes the data presented is insufficient in length of time to accurately reflect the true nature of a plaintiff's work, or is otherwise unrepresentative of the plaintiff's employment, it may find that the employer failed to meet his initial summary judgment burden. See *e.g., Bruce v. RCS, LLC*, No. 10-414, 2011 WL 802614, at *4 (E.D. La. Mar. 1, 2011) (denying summary judgment on seaman status because records submitted in support were deemed insufficient and stating, "[W]hatever temporal connection here existed between Plaintiff and a vessel or a fleet of vessels, it cannot be determined from the record whether 'the 30 percent threshold for determining substantial temporal connection' is applicable" (quoting *Roberts*, 266 F.3d at 375)).

In this case, Plaintiff does not object to CTS's failure to include his records from August, 2014 until the date of his accident on April 18, 2018, nor does he argue that the year selected does not fairly represent the other years preceding his accident. Indeed, he states that, at least until the time of his injury, "his sole job function was to handle lines in the Mississippi River." (Doc. 21 at 8.) Blanda's complaint is not with the year chosen but rather, that the data produced for that year does not fairly capture all of his time working on CTS vessels. Thus, under the particular

circumstances of this case, the Court finds it appropriate to consider only the employment records for the year preceding Blanda's injury.[13]

Blanda responds to the Motion in four ways. First, pointing to his deposition testimony, he argues that the CTS records do not accurately reflect Plaintiff's actual time aboard CTS vessels (Doc. 21 at 3–8), and the 8% estimate is "woefully inadequate" (*Id*. at 3–4 (citing Doc. 21-2, Blanda Deposition, at 173–74, 93).) He insists that the records omit a "very large percentage of time" (Doc. 21 at 6, 7) and a "substantial amount of time" (Doc. 27 at 4, ¶ 18).

Second, he argues the evidence in the record shows the opposite: that Blanda "spen[t] a large percentage of his working time aboard vessels owned and operated by CTS . . ." sufficient to establish his status as a seaman. (Doc. 21 at 7; *see also id*. at 14.)

Third, Blanda maintains that, in calculating the percentage of time he worked on vessels, the Court should disregard the time he spent on shore waiting to be assigned to a specific job. *Id*. at 8.

Fourth and finally, Blanda asks the Court to consider his employment time after the accident in question when he was being trained for a new position as a boat operator. (Doc. 21- at 1 (citing Doc. 21-2 at 20); Doc. 27 at 4, ¶ 18 (citing Doc. 21-2 at 173, 184–85).) Each of these will be considered.

### H.  Has CTS Met Its Summary Judgment Burden?

On the critical issue in this *Motion*, Blanda bears the burden of proof at trial, i.e., to succeed in his claims under the Jones Act, for unseaworthiness and maintenance and cure, he must first prove that he is a seaman. *Becker v. Tidewater, Inc.,* 335 F.3d 376, 390 (5th Cir. 2003), as revised

---

[13] Blanda does argue that the Court should consider a time period outside of that one year: namely, the last six months of his employment, after his accident, when he was training to be a boat operator. (Doc. 21 at 1 (citing Doc. 21-2, Blanda Deposition, at 20); Doc. 27 at 4, ¶ 18 (citing Doc. 21-2 at 173, 184-85).) This issue is considered below.

(July 24, 2003) ("As plaintiff bears the burden of proof for establishing seaman status, he accordingly must show that he fits within the framework of *Chandris*." (citations omitted)). Where, as here, the burden of persuasion at trial is on the nonmovant Blanda, the movant CTS can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the non-moving party's claim or (2) showing the Court that the non-moving party's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. 10A MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 2721.1 (4th ed. 2022) (citing with approval and discussing *Celotex*, 477 U.S. at 330–36 (Brennan, J., dissenting)). In this case, CTS has attempted to do both.

As to option one, CTS's attempt to gain summary judgment by offering affirmative evidence negating an essential part of Plaintiff's case, the *Motion* fails because Blanda has raised factual issues regarding the accuracy and completeness of that evidence. Plaintiff argues that the work times reflected in the CTS logs "do not tell the whole story" (Doc. 21 at 10), are "woefully inadequate" (*id*. at 3) and that Blanda "spen[t] much more time aboard CTS launch vessels" than is reflected in the records. (*Id.* at 10.)

These arguments are supported by Blanda's testimony. He testified that the CTS records only begin "once we touch a line . . . But we'll be out there before and after all those times get put in." (*Id*. at 3 (citing Doc. 21-2, Blanda Deposition, at 151).) Plaintiff gives as an example being "in a boat for eight hours without even touching a line." (*Id*.) He testified that the CTS records "didn't include travel time to and from the mooring locations or any work that had to be done prior to mooring operations beginning, which could include waiting for the ship to get into position,

waiting for the tugs to arrive, and various other duties." (*Id.* at 14 (citing Doc. 21-2, Blanda Deposition, at 35–36).) [14]

But in option two "it is not necessary for the movant to introduce any evidence in order to prevail on summary judgment, at least in cases in which the nonmoving party will bear the burden of proof at trial. The movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him." KANE, *supra*, at § 2727.1. *See also Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

By showing that Blanda has insufficient evidence to establish that he spent at least 30% of his work in vessel-related activities, CTS successfully shifted the burden shifted to Blanda to show with evidence that a reasonable jury could find in his favor on the issue of seaman status. *Mudrick*, 250 F. App'x at 57.

### I. Has Blanda Met His Summary Judgment Burden?

Here, to show that a reasonable jury might find he is a seaman, Blanda must point the Court to record evidence showing that he spent 30% or more of his time in vessel work. He hasn't; he has made only conclusory statements and unsupported allegations, and that is not enough.

Plaintiff correctly argues that the 30% figure is "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases." (Doc. 21 at 14 (quoting without proper citation *Chandris*, 515 U.S. at 371).) But here, Plaintiff offers *no* evidence upon which to base *any* percentage of vessel work, let alone 30% or something close to it, nor does he attempt to explain why his case is an exceptional one appropriate for departure from the 30% rule of thumb. *See Roberts*, 266 F.3d at 377 (holding that although plaintiff came "quite

---

[14] While CTS responds that their records do take these items into account and that its records are accurate and complete (Doc. 24 at 2), there remains a genuine issue of material fact.

close (27.7 percent) to meeting the 30 percent requirement… [n]evertheless, [he failed to justify]

an exceptional departure from the 30 percent test."). *See also Moore v. Universal Sodexho (USA),*

*Inc.*, No. 08-3633, 2010 WL 11583176, at *3 (S.D. Tex. Jan. 2, 2010).

So, while Plaintiff argues he "spen[t] a large percentage of his time working aboard vessels

owned and operated by CTS . . ." (Doc. 21 at 7; *see also id.* at 14), he never approximates that

percentage and, more importantly, he does not support his argument with record evidence. The

only evidence he points to are portions of his deposition testimony. (Doc. 21-2 and 17-3.) But

nowhere in Plaintiff's deposition testimony does he attempt to quantify the number of hours per

day, per week or per month that he spent working on vessels, not even with his own estimate.

Nowhere in Plaintiff's deposition does he attempt to estimate the percentage of his work time spent

on vessels as opposed to his land-based duties including his work on docks and time waiting for

an assignment.

Indeed, in argument, he concedes that only a "*small fraction*" of his total work time was

spent handling lines from either vessels or docks and that "*most* of [his] time is waiting for jobs to

be called in." (Doc. 21 at 15 (emphasis added).) Blanda attempts to overcome that concession by

arguing, without citation to legal authority or record evidence, that the time he spent on land

waiting for an assignment was only "incidental to [his] work," "[was] not a job-related function or

duty and should therefore not be used" in calculating Plaintiff's percentage of worktime on vessels.

(*Id.*; Doc. 27 at 4–5, ¶ 18.) According to Blanda, this waiting time "had nothing to do with the

work of CTS or the work of linemen." (Doc. 21 at 14–15.)

In its reply brief, CTS argues strenuously that Blanda's time in the van waiting for an

assignment should be considered because, during this waiting time, Plaintiff was on duty, being

paid for his time and was not free to leave. (Doc. 24 at 3–4 (citing *Brewer v. Motiva Enters., LLC.*,

28

No 35, 306, (23d Judicial District Court, Par. Of St. James, La., Feb. 18, 2014) (Judgement With Written Reasons) (located at Doc. 17-7)).)

The Court agrees with CTS that Plaintiff's entire workday, including time waiting for a specific assignment, should be considered in measuring the percentage of his time doing vessel-based work. The fact that he was waiting for an assignment doesn't mean it wasn't job-related, as suggested by Plaintiff. All time on the job, even waiting time, is relevant to measuring the relative amount of time in which the worker is exposed to maritime perils.

Plaintiff's position flies in the face of the uncontroverted evidence offered on this point by CTS, namely the Affidavit of Anthony Almerico (Doc. 17-5 at 3, ¶ 7). There, Almerico states that Blanda was paid by the hour for each hour worked during a normal 24-hour shift and his duties included "waiting to be called by dispatches or riding to job locations." (*Id*.) This testimony is not contradicted by Blanda's deposition testimony or other record evidence. Furthermore, even if the Court were to ignore Plaintiff's waiting time, Plaintiff still has not provided the Court with evidence in any way quantifying his work on vessels sufficient to show he spent 30% or more of his work time doing so.

Finally, Blanda asks the Court to consider the time after the accident when he was being trained as a boat operator. (Doc. 21 at 1 (citing Doc. 21-2, Blanda Deposition, at 20); Doc. 27 at 4, ¶ 18 (citing Doc. 21-2, Blanda Deposition, at 173, 184–85 ("[F]or the last six months of his employment, Mr. Blanda was training as an operator and would spend approximately twelve (12) hours of every shift aboard a vessel.")).[15] Even if the Court were to do this, Plaintiff still has provided insufficient quantification of his vessel related work to meet his summary judgment burden. In addition, the Court notes that the six months in which he was training to be a boat

---

[15] This testimony is found at Doc. 21-2 at 172–73. Two pages cited to by Blanda (Doc. 21-2 at 184–85) are not in the record.

operator came after his accident and potentially represents a substantial or fundamental change in his employment duties which should not be considered in deciding his status as a seaman before this change. *Becker*, 335 F.3d at 389; *Gage*, 431 F. Supp. 3d at 762.

In conclusion, based on the record evidence before the Court, Blanda has failed to meet his burden to show that a reasonable jury could find that Blanda was a seaman. *See, e.g., Roberts*, 266 F.3d at 376–78 (affirming granting of summary judgment against plaintiff on seaman status, even though he was able to show 24.88% of his work time was vessel related to his employer's vessels or an identifiable fleet). *Cf. Lama v. Fla. Marine Transporters, LLC*, No. 17-9777, 2019 WL 1396421, at *4 (E.D. La. Mar. 27, 2019) (Morgan, J.) (denying summary judgment on seaman status based on plaintiff's testimony raising questions as to the accuracy of employer's records showing only 12.5% of his time was vessel-related combined with plaintiff's estimate of 70% vessel-related work.).

## VI.    CONCLUSION

For the foregoing reasons, the *Motion for Partial Summary Judgment on Seaman Status* (Doc. 17) is **GRANTED**, and the Court finds as a matter of law that Claimant/Plaintiff Douglas Blanda was not a seaman of Petitioners in Limitation/Defendants Cooper/T. Smith Corporation and Cooper/T. Smith Mooring Co., Inc.

Signed in Baton Rouge, Louisiana, on <u>April 20, 2022</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**